SECOND DISTRICT—OCTOBER, 1915.    225

Baitty v. Toledo, Peoria & Western Ry. Co., 196 Ill. App. 225.

Harley Baitty, Appellee, v. Toledo, Peoria & Western Railway Company, Appellant.

Gen. No. 6,125.    (Not to be reported in full.)

Appeal from the Circuit Court of Peoria county; the Hon. THEO-DORE N. GREEN, Judge, presiding. Heard in this court at the April term, 1915. Reversed and remanded. Opinion filed October 20, 1915.

## Statement of the Case.

Action by Harley Baitty, plaintiff, against the Toledo, Peoria & Western Railway Company, defendant, for personal injuries resulting in the amputation of both legs. There was verdict and judgment for plaintiff for $25,000, from which defendant appeals.

The declaration alleged that plaintiff was in the act of boarding the train with the intention of becoming a passenger thereon and was in the exercise of due care for his own safety; that defendant started the train without warning him, after plaintiff had been invited by its servants to board said train at that place and time, and that because of such wrongful conduct plaintiff was injured. The declaration also alleged in each of said counts that defendant had long been in the habit of stopping its passenger trains at a point between the Union Depot and the Illinois River bridge in the City of Peoria; that for a long time prior thereto it had been the practice and custom for large numbers of persons to board the passenger trains of defendant at such point; and that defendant knew of and sanctioned such custom, and had permitted and invited intending passengers to board its trains in that manner.

The evidence showed that the passenger trains of defendant, leaving the Union Depot in Peoria on their eastbound run, cross Chestnut street immediately and proceed in a northeasterly direction across certain tracks of the Rock Island Railroad and the bridge over the Illinois River, and thence east. It is the contention

of plaintiff that defendant's train No. 2, on the night in question, came to a full stop just after leaving the depot, so that the first passenger coach rested on Chestnut street; that plaintiff approached this motionless train for the purpose of boarding it, having a ticket in his pocket entitling him to passage from Peoria to Washington, Illinois, took hold of the hand rails with both hands and was about to place his foot on the lowest step when the train started without any warning and with a great jerk; that he had been invited to board this train at this point by a man in uniform, standing on the platform of the car, whom he understood to be one of defendant's servants; and that the jerk with which the train was started caused him to lose his hold on the car and he was thrown under the wheels and injured. It is the contention of defendant that this train did not stop at Chestnut street that night at all; that plaintiff attempted to get on the train while it was in motion and was injured thereby; that no employee of the company invited him to get on; that plaintiff was intoxicated when he tried to get on the train; and that defendant had no custom of stopping its passenger trains at Chestnut street and inviting and permitting passengers to board its trains there, but that it was occasionally obliged to stop its trains so that a part thereof rested on Chestnut street, because its crossing of another railroad ahead was blocked by other trains.

Two witnesses testified for plaintiff that the train was at a standstill when he tried to get on, one of these witnesses being plaintiff. Four witnesses testified for defendant that the train was in motion when plaintiff was trying to board it, and of these witnesses two were not railroad men, while the other two were not employed by appellant but by another railroad company at Peoria. On the question whether or not train No. 2 stopped at Chestnut street the night in question before plaintiff attempted to get on, two witnesses, one

being plaintiff, testified that the train did so stop, while at least nineteen witnesses testified that the train did not stop at all after leaving he Union Depot until after the rear of the last coach was north of Chestnut street a considerable distance. Some of these witnesses were railroad men working for appellant, but at least ten of the witnesses on this point had no connection with defendant or any other railroad company.

On the question whether or not an employee of defendant invited plaintiff to board the train at Chestnut street, plaintiff testified that, as he went along the street towards the train, a man on the platform, who appeared to be dressed in a blue uniform, called out to him to "Hurry up," but plaintiff afterwards failed to identify either the conductor or the brakeman on duty on that train that night as being the person who had made that remark to him, while the conductor and the brakeman, the only uniformed servants of defendant on that train that night, denied that they had seen plaintiff before he was run over or that they had urged or invited him to board the train.

Plaintiff and four others testified that he was not intoxicated the evening of the accident, while sixteen witnesses testified for defendant to circumstances making it apparent that appellee was under the influence of liquor when he attempted to board the train. Three doctors and two nurses testified to the odor of the liquor on his breath after the accident and to the fact that the amount of anaesthetic required in his case before operating upon him immediately after the accident was less than usual because of his being under the influence of liquor. In rebuttal, one of plaintiff's witnesses testified that while plaintiff lay on the ground, just after being injured, some one produced a bottle of whisky and gave a part of its contents to plaintiff. This witness was the only one who testified to this occurrence and he was unable to identify the

person who produced the liquor. Others present at the same time denied that any such thing happened.

Fifteen witnesses testified for plaintiff that this particular train was in the habit of stopping with one or more of its coaches on Chestnut street and that passengers frequently boarded it at that point, and while the train was at a standstill. Twenty-eight persons testified for defendant that there was no established custom on the part of the servants of defendant operating this train to bring it to a stop at Chestnut street, and many of these witnesses stated that such persons as occasionally boarded his train at Chestnut street did so while the train was moving slowly across the street. Some of defendant's witnesses on this point were railroad men, but many of them were without any apparent interest.

FRANK T. MILLER and JOHN M. ELLIOTT, for appellant; STEVENS, MILLER & ELLIOTT, of counsel.

HENRY R. RATHBONE and CLARENCE W. HEYL, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

## Abstract of the Decision.

CARRIERS, § 289*—*when carrier not liable to passenger attempting to board train.* In an action to recover for injuries to passenger attempting to board train, evidence examined and *held* to show that passenger was intoxicated at time of attempting to board train while in motion, that he was without the exercise of due care for his own safety and that carrier was not negligent.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.